IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

ARNOLD W. RUSSELL and                                                              PLAINTIFFS
PAMELA RUSSELL

VS.                              CASE NO. 4:04-CV-4116

ASHLAND, INC., et al.                                                              DEFENDANTS

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment filed on behalf of Ashland, Inc. ("Ashland"). (Doc. 113). Plaintiffs Arnold W. Russell and Pamela Russell have responded in opposition. (Doc. 135). Also before the Court is a Motion for Summary Judgment filed on behalf of Union Oil Company of California (d/b/a UNOCAL)("UNOCAL"). (Doc. 106). Plaintiffs have responded in opposition. (Doc. 133). The matter is ripe for consideration.

### I. BACKGROUND

Plaintiff Arnold W. Russell went to work for Cooper Tire and Rubber Company ("Cooper Tire") in Texarkana, Arkansas, starting on August 21, 1977, and remained at Cooper Tire until his retirement in 2002. (Doc. 106-2, pgs. 2-3). The Cooper Tire facility in Texarkana is a large tire manufacturing plant, with over 40 acres under roof. (Doc. 109-2, pg. 4). Russell started at Cooper Tire as a tire builder, and continued in that position for approximately nine (9) years. At his deposition, Russell testified that he regularly used "Benny" in the tire building process. (Doc. 106, pgs. 4-5). "Benny" is a rubber solvent containing benzene. At Cooper Tire, Benny was commonly referenced as Cooper Code 12101. At his deposition, Russell testified that Benny is a clear liquid and smells like gasoline. (Doc. 109-2, pg. 7; Doc. 136-2, pg. 8). Benny was kept in an open bucket at Russell's tire building station throughout the workday. (Doc. 136-2, pgs. 5, 9). Russell used Benny

to apply ply and beads in the tire building process, and to remove wrinkled tread. (Doc. 136-2, pg. 5-6). Russell testified that he could build up to 240 tires per day, and that he used Benny on every ply of every tire. (Doc. 136-2, pg. 12).

In 1987, Russell applied for and obtained the position of millwright, which is a job in the maintenance department at Cooper Tire. (Doc. 136-2, pg. 10). Russell continued to use Benny in the maintenance department. Benny was used to wash parts, clean tools and to clean his hands. (Doc. 106-2, pgs. 9-11). Harold W. "Buddy" Bell, one of Russell's co-workers at Cooper Tire, testified at his deposition that "Benny buckets" were filled first thing in the morning, and that they would have to be re-filled two or three times a day. (Doc. 136-3, pg. 3-4). Bell also testified that he and his co-workers were "always kind of dizzy headed when we got off." (Doc. 136-3, pg. 4). Another Cooper Tire employee and co-worker of Russell's, John Dagostino, testified at his deposition that there were no labels or manufacturer information on the Benny bucket, nor were there any warning labels at the source of the Benny. (Doc. 134-4, pg. 3). Dagostino added that he sometimes had to take a thirty-minute break away from his work area because the Benny made him feel high. (Doc. 136-4, pg. 4).

Russell testified that he never saw a Material Safety Data Sheet ("MSDS") for benzene or for rubber solvent. (Doc. 136-2, pg. 12). Bobby McDowell, currently a millwright at Cooper Tire, testified at his deposition that he used Benny when building tires as a tire builder. (Doc. 136-5, pg. 3). McDowell also testified that no information was provided to him regarding the brand, manufacturer or product name associated with Benny.

Rita Feczer, a chemist at Cooper Tire, testified that Cooper Code 12101 was a rubber solvent widely used in the 1980s by tire builders to retackify rubber. (Doc. 136-7, pg. 6). Feczer also testified that the nicknames for Cooper Code 12101 were "Benny" and "gas." (Doc. 136-7, pg. 9). Ashland

2

was a supplier of Cooper Code 12101. (Doc. 136-7, pgs. 6-7; Doc. 136-11, pg. 4). UNOCAL was also a supplier of Cooper Code 12101, dating back as far as 1982. (Doc. 134-17, pg. 2).

In 2002, Russell was diagnosed with Acute Myelogenous Leukemia. ("AML"). (Doc. 134-19, pg. 3). Russell underwent extensive treatment at The University of Texas M.D. Anderson Cancer Center in Houston, Texas. His leukemia is currently in complete remission.

On August 6, 2004, Russell brought this toxic exposure lawsuit against various chemical suppliers for Cooper Tire, alleging that his workplace exposures at Cooper Tire caused his AML. The matter is now ripe for consideration with regard to two motions for summary judgment, filed on behalf of Defendants Ashland and UNOCAL.

## II. SUMMARY JUDGMENT STANDARD

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, dispositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); *Krenik v. County of LeSueur,* 47 F.3d 953, 957 (8th Cir. 1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial–whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Agristor Leasing v. Farrow,* 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper*

*Indus. Union-Management Pension Fund,* 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252.

The movant's burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548; 91 L.Ed.2d 265 (1986). The Court need not decide whether the moving party has satisfied its ultimate burden of persuasion unless and until the Court finds that the moving party has discharged its initial burden of production. *Celotex Corp.*, 477 U.S. at 330-331 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157-161, 90 S.Ct. 1598, 1608-10, 26 L.Ed.2d 142 (1970)). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur,* 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 256.

### III. DISCUSSION

The Motions for Summary Judgment filed on behalf of Defendants Ashland and UNOCAL raise substantially similar issues for the Court to address. As such, the Court will analyze the motions together, noting unique issues raised in the parties' respective motions where appropriate. In its

Motion for Summary Judgment, Ashland argues that Russell's claims fail as a matter of law "because there is no evidence that Mr. Russell himself actually worked with or was exposed to a benzene-containing product manufactured, distributed and/or sold by Ashland at Cooper Tire." (Doc. 114, pg. 3). Similarly, UNOCAL argues that there is "no testimony tying Mr. Russell with any UNOCAL product." The Court disagrees.

Generally, to prove causation in a toxic tort case, a plaintiff must show both that the alleged toxin is capable of causing injuries like that suffered by the plaintiff in human beings subjected to the same level of exposure as the plaintiff, and that the toxin was the cause of the plaintiff's injury. *Bonner v. ISP Techs.*, 259 F.3d 924, 928 (8th Cir. 2001) (citing *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1106 (8th Cir.1996)). In other words, Russell must put forth sufficient evidence for a jury to conclude that the product was capable of causing his injuries, and that it did. *Bonner*, 259 F.3d at 928. Russell does not "need to produce 'a mathematically precise table equating levels of exposure with levels of harm' in order to show" that he was exposed to a toxic level of benzene, "but only 'evidence from which a reasonable person could conclude' " that his exposure probably caused his injuries. *Bonner*, 259 F.3d at 928; *Bednar v. Bassett Furn. Mfg. Co.,* 147 F.3d 737, 740 (8th Cir. 1998) (quoting *Wright v. Willamette Indus., Inc.,* 91 F.3d at 1107). Viewing the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the Plaintiff, as the Court must at this stage, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587, the Court is satisfied that Russell has set forth evidence (*see* Doc. 106-6, pgs. 18-20) from which a reasonable person could conclude that his exposure probably caused his injuries. *See Bonner*, 259 F.3d at 928.

In addition, Ashland argues that Russell's claims fail under the Arkansas Supreme Court's

5

*Chavers v. General Motors Corporation* decision, 349 Ark. 550, 79 S.W.3d 361, 367 (2002). *Chavers* applies what is known as the "frequency, regularity and proximity" test, *see Jackson v. Anchor Packing Co.*, 994 F.2d 1295 (8th Cir. 1993) which requires a plaintiff to prove (1) exposure to a particular product supplied by the defendant; (2) with sufficient frequency and regularity; (3) in proximity to where he actually worked; (4) such that it is probable that the exposure to the product caused the plaintiff's injuries. *Chavers*, 79 S.W.3d at 369.

Upon review, the summary judgment record before the Court satisfies the *Chavers* standard. Russell has produced testimony and documentation that shows he was exposed to a liquid rubber solvent known by the slang term "Benny" and as Cooper Code 12101, which contained some amount of benzene. In response to the Court's Order of January 18, 2008, (Doc. 104) Cooper designated its Chief Chemist at the Texarkana facility, Jean Hoffman, for deposition as Cooper's corporate representative. (*See* Doc. 136-11, pg. 2). Hoffman testified that both Ashland and UNOCAL supplied Cooper Code 12101 rubber solvent to Cooper Tire, and that Cooper's "records reflect that." (Doc. 136-11, pg. 4). As such, Plaintiffs have produced summary judgment evidence creating a material question of fact with regard to Russell's exposure to benzene-containing products supplied to his employer, Cooper Tire, by Defendant Ashland. Russell has produced testimony that he worked with the solvent(s) at issue over the course of his employment with Cooper Tire, which spanned from 1977 to 2002. Russell has produced testimony that shows the rubber solvent or "Benny" was proximate to his actual work station, to the extent that Russell cleaned parts and washed his hands with the substance. As such, the Court is satisfied that it is possible, and perhaps probable, that Russell's exposure to the rubber solvent product caused his illness. The result is that Russell has satisfied the *Chavers* test, and

Ashland's Motion for Summary Judgment should be denied.

UNOCAL's Motion for Summary Judgment also argues that Russell's claims fail under *Chavers*. Russell has produced summary judgment proof, in the form of deposition testimony and documentation, showing that UNOCAL was a supplier of Cooper Code 12101, the rubber solvent at issue in this matter. (*See* Doc. 134-17, pg. 2). As such, the Court is satisfied that Russell has satisfied the legal standards articulated in both *Chavers* and *Bonner* with regard to Defendant UNOCAL. UNOCAL further argues that there can be "no accurate amount of 'dose' that can be calculated by Plaintiffs' expert witnesses. Upon review of the Report prepared by Dr. Melvyn Kopstein, the Court disagrees. (*See* Doc. 106-6, pgs. 13-18). The fact that UNOCAL has produced expert reports and opinions (*see* Doc. 106-9; Doc. 106-10; Doc. 106-11) suggesting or proposing other potential causes of Russell's AML further supports the Court's determination that genuine issues of material fact exist in the matter, rendering summary judgment inappropriate under Fed. R. Civ. P. 56(c) and *Anderson,* 477 U.S. at 250. As a result, UNOCAL's Motion for Summary Judgment should be denied.

## IV. CONCLUSION

For reasons stated herein and above, both Ashland's and UNOCAL's Motions for Summary Judgment should be and hereby are **DENIED**. An order of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, this 6th day of August, 2008.

                                               /s/ Harry F. Barnes
                                          Hon. Harry F. Barnes
                                          United States District Judge